COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Huff and Senior Judge Clements


CRYSTAL D. BIRCHFIELD

v.      Record No. 0938-11-3

SCOTT COUNTY DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM

ROBERT KENNETH BIRCHFIELD                                NOVEMBER 29, 2011

v.      Record No. 0940-11-3

SCOTT COUNTY DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF SCOTT COUNTY
Charles B. Flannagan, II, Judge Designate

(Daisy N. Compton, on brief), for appellant Crystal D. Birchfield.
Appellant Crystal D. Birchfield submitting on brief.

(John H. Qualls, on brief), for appellant Robert Kenneth
Birchfield.  Appellant Robert Kenneth Birchfield submitting on
brief.

(Michael F. McClellan Carrico; Jennifer Ashley Sturgill, Guardian
*ad litem* for the minor children, on briefs), for appellee.  Appellee
and Guardian *ad litem* submitting on briefs.


Crystal D. Birchfield (mother) and Robert Kenneth Birchfield (father) appeal an order

terminating their parental rights to their children.  Mother and father argue that the trial court erred

by (1) terminating their residual parental rights to their children, in that the Scott County

Department of Social Services (the Department) failed to meet its burden under Code

§ 16.1-283(C)(2) as it failed to prove by clear and convincing evidence that mother and father were,

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

without good cause, unwilling or unable within a reasonable period of time to remedy substantially the conditions which led to or required continuation of the foster care placement of the children; (2) denying mother's and father's motions to strike the evidence of the Department despite the Department's failure to demonstrate by clear and convincing evidence the requisite showings of Code § 16.1-283(C)(2); (3) relying in part upon Code § 16.1-283(B), as opposed to relying solely upon Code § 16.1-283(C)(2), in considering mother's and father's motions to strike, as the Department clearly brought the petition solely upon Code § 16.1-283(C)(2); (4) considering evidence under both subsections (B) and (C)(2) of Code § 16.1-283, thereby depriving mother and father of their due process rights of notice and opportunity to defend[1]; (5) finding the evidence to be sufficient that the Department made reasonable and appropriate efforts to offer and provide services to the parents; (6) not finding under the facts of these cases that the Department was required as a matter of law and Code § 16.1-283(C)(2) to provide services to the parents up to and until the actual termination hearing so the trial court could give consideration thereto; (7) failing to admit into evidence and to consider a favorable Tennessee home study on the parents' residence while they were residing in Tennessee, as proper impeachment of caseworker April Ogle's direct examination testimony; and (8) violating mother's and father's substantive and procedural due process rights as provided under Article 1, Section 11 of the Constitution of Virginia and as provided under the Fourteenth Amendment of the United States Constitution.  We find no error and affirm the decision of the trial court.

---

[1] After considering mother's and father's motions to reconsider, the trial court amended its order terminating their parental rights to the extent that it referenced Code § 16.1-283(B) as the basis for the termination.  Therefore, the fourth assignment of error is a moot issue and will not be considered by this Court.  See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980) (holding that "mootness has two aspects: 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome'" (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969))).

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Mother and father have two children, A.B. and R.B., who are the subject of these appeals. In April 2007, the Department came into contact with the children when the court asked the Department to administer a drug screen on mother.[2] Mother tested positive for illegal drugs, and A.B. and R.B. were placed in the Department's custody. Father refused a drug screen, but admitted using illegal drugs. Since mother and father lived in Tennessee, the Department arranged for interstate home studies. The studies were unfavorable. The Department offered in-home services, but mother and father continued to have positive drug screens.

After the second negative home study, mother and father moved back to Virginia. They showed improvement and started having negative drug screens. Father found a job. In October 2008, the children were placed back in their parents' home, with the Department retaining custody. The Department offered more in-home services to assist with parenting and to monitor drug use. However, the Department received complaints and, in June 2009, asked mother to leave the home because of anger-management issues. Mother also was not complying with the in-home services. Mother left, and the children continued to live in the home with father. The Department arranged for supervised visits with mother and the children and assisted father financially with several bills.

In July 2009, the Department removed the children from the home because father allowed unsupervised visits between mother and the children. In September 2009, father had a positive

---

[2] Mother was before the court in a custody proceeding for another child who is not the subject of this appeal.

drug screen.  Father said that he had a prescription for the drug, but the Department could not verify it.  For a while, father stopped visitation and left Scott County.  He later moved to Bristol, Virginia, and resumed visitation.  Without the Department's knowledge, father and mother again moved back to Scott County.  In 2010, father pled guilty to a felony and two misdemeanors.

The children were placed in foster care.  Mother regularly attended visitation, and father visited as his work schedule allowed.  Mother started parenting programs required by the Department, but she did not complete them.  Mother started an anger management program, but did not complete it because she could not focus on the information.[3]

On October 7, 2009, the Department filed petitions to terminate mother's and father's parental rights.  On August 2, 2010, the juvenile and domestic relations district court terminated their parental rights, and both parties appealed.  The trial court heard evidence on November 9, 2010.  At the conclusion of the Department's evidence, mother and father moved to strike, which the trial court overruled.  Then, mother and father each presented evidence.  The trial court took the matter under advisement, allowing the parties to submit any final motions and closing arguments in writing.  The guardian *ad litem* was the only one who filed a letter with the court and advocated for termination.  The trial court issued a letter opinion on March 22, 2011, and entered an order on April 8, 2011 terminating the parental rights of both parents.  Mother and father filed a joint motion to reconsider.[4]  The trial court modified its April 8, 2011 order to indicate that the parents' rights were terminated based on Code § 16.1-283(C)(2), not Code

---

[3] Once the Department stopped providing services to the parents, mother did not have an opportunity to complete the parenting and anger-management programs that she started.

[4] The court heard the parties' argument regarding the parents' motion to reconsider via a telephone conference on April 27, 2011.  The parties did not provide a transcript or written statement of facts for that hearing.

§ 16.1-283(B). The remaining portions of the motion to reconsider were overruled, and a final order was entered on April 29, 2011. These appeals followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

### Termination of parental rights

Mother and father argue that the trial court erred in terminating their parental rights because the Department failed to meet its burden under Code § 16.1-283(C)(2).[5]

The trial court noted that "Code § 16.1-283(C)(2) requires the parents to not only remedy the conditions that initially led to foster care placement, but to also substantially remedy the conditions that 'required continuation' of foster care placement." The trial court found that despite all of the services offered by the Department, "it did not appear that significant progress had been made with regard to remedying the offending conditions."

---

[5] A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

The Department removed the children from the parents' home in April 2007 because both parents had substance abuse problems. The Department offered numerous services to the parents, and even returned the children to the parents' home from October 23, 2008 until June 3, 2009. However, in June 2009, mother was asked to leave the home because of her anger issues. When father did not comply with the Department's requirement that mother have only supervised visitation, the Department removed the children in July 2009. Father, then, failed to maintain contact with the Department for several weeks. In September 2009, father tested positive for a drug, but explained that he had a prescription for it. The Department was unable to verify the prescription. In 2010, father pled guilty to a felony and two misdemeanors.

In addition, mother did not satisfactorily participate in the Department's anger-management classes. She was not focused and would fall asleep during the classes. "The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)).

In October 2009, which was approximately two years and six months after the children first came into the Department's custody, the Department filed a petition for termination of parental rights. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). The parents had over two years to remedy their situation and the conditions that led to the children continuing to be in foster care, but they were unable to do so.

The evidence was sufficient to terminate mother's and father's parental rights under Code § 16.1-283(C)(2).

Reasonable and appropriate efforts

Mother and father argue that the trial court erred in finding that the Department made reasonable and appropriate efforts to offer and provide services to the parents.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

Contrary to the parents' arguments, the Department provided numerous services to the parents. The children initially came into the Department's custody in April 2007 because mother tested positive for illegal drugs and father admitted taking them. The Department offered substance abuse services to the parents; however, initially, the parents continued to have positive drug tests. Eventually, they started having negative tests, and the Department was able to work with them in temporarily placing the children back in the home. The Department continued to offer them substance abuse services, including monitoring their drug use, performing drug screens, and doing pill counts, while the children were placed in the parents' home.

The Department arranged to have home studies while the parents lived in Tennessee. The home studies were unfavorable.

The Department also provided in-home services to the family. They offered parenting classes, but the parents did not complete them. The Department assisted the parents when the children were returned to their custody in October 2008. Despite these services, the Department received complaints about mother's anger issues. The Department met with the parents and explained that either mother had to leave the home or the children would have to return to foster care. Mother decided to leave. The Department offered anger management classes to mother, but she could not focus during the classes. In fact, the counselor testified that it appeared that

mother started "nodding off" during some of the classes. As a result, the classes were unproductive, and the Department stopped offering their services.

When mother left the home, the Department told father that mother was to have supervised visitation only. Father did not follow this requirement and allowed mother to visit with the children unsupervised. Father told the Department that he did so because he had an emergency and mother threatened suicide if she could not see the children unsupervised. The Department had no choice but to remove the children for their safety.

The evidence was sufficient to prove that the Department offered "reasonable and appropriate services" to mother and father.

Motion to strike

Mother and father argue that the trial court erred in overruling their motions to strike and that it improperly considered Code § 16.1-283(B), in addition to Code § 16.1-283(C)(2). At the conclusion of the Department's evidence, mother and father moved to strike, and the trial court overruled their motions. Both mother and father then presented evidence. After hearing from all of the witnesses, the trial court asked the parties to submit their renewed motions to strike and closing arguments in writing. Neither mother nor father filed a motion to strike or closing argument.

> "'When a defendant in a civil or criminal case proceeds to introduce evidence in his own behalf, after the trial court has overruled his motion to strike, made at the conclusion of the introduction of plaintiff's evidence in chief, he waives his right to stand upon such motion.'" Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 73, 688 S.E.2d 199, 204 (2010) (quoting Spangler v. Commonwealth, 188 Va. 436, 438, 50 S.E.2d 265, 266 (1948)). Thereafter, the defendant must renew the motion to strike at the conclusion of all the evidence, or in a bench trial, at the very least, he must reassert the issues raised in his original motion to strike in his closing argument in order to preserve the issues for appeal. Id. at 75 n.4, 83-84, 688 S.E.2d at 205 n.4, 210.

McDowell v. Commonwealth, __ Va. __, __, __ S.E.2d __, __ (Nov. 4, 2011).

- 8 -

Since the parties did not renew their motions to strike nor did they make a closing argument, they did not preserve these issues for appeal, and we will not consider them.

## Rule 5A:20(e)

Mother and father argued that the trial court erred in not finding that the Department was required to provide them services up to and until the actual termination hearing. They also contend the trial court erred in not admitting into evidence a home study from Tennessee.

Rule 5A:20(e) mandates that appellant's opening brief include "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error."

Mother and father did not comply with Rule 5A:20(e) because their opening briefs do not contain any principles of law, or citation to legal authorities, to fully develop their arguments.

Mother and father, as the appellants, have the burden of showing that reversible error was committed. See Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992). Unsupported assertions of error "do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

We find that mother's and father's failure to comply with Rule 5A:20(e) is significant, so we will not consider the sixth and seventh assignments of error. See Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008) ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention."); Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008).

## Rule 5A:18

Mother and father argued the trial court violated their substantive and procedural due process rights under Article 1, Section 11 of the Constitution of Virginia and the Fourteenth Amendment of the United States Constitution. Mother and father acknowledge that they did not

make this argument to the trial court and contend that the "good cause and/or ends of justice exceptions to Rule 5A:18 are applicable."

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  Rule 5A:18.

We "will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).  "The purpose of Rule 5A:18 is to allow the trial court to correct in the trial court any error that is called to its attention."  Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (en banc).

Mother and father have asked this Court to apply the good cause exception and the ends of justice exception to this issue; however, they do not argue why the exceptions should be applied.  There was no miscarriage of justice in this case, and the ends of justice exception does not apply.  See e.g., Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the exception, a *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." (emphasis added)).

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.